Aaron Jackson 5-15-0274 Warren Whenever you're ready May it please this court, counsel. I'm Susan Wilhelm with the Office of the State Appellate Defender, and I represent the defendant Aaron Jackson. I'll be focusing today on Argument 3, that the prosecutor committed a reversible error when he made comments that were not based on the evidence of trial in his closing arguments. After Aaron Jackson was identified by an artichoke ball at Detective McAfee's urging, the investigation into Mayor Thornton's death narrowed. Fingerprints were only compared to Jackson, and they were not run through APHIS. Here we have 57 lifts off Mayor Thornton's car, 26 of which were suitable for comparison, and only one from the exterior rear passenger side door matched Aaron Jackson. The only DNA that linked Aaron Jackson to the Thornton murder was a blood spot on the left front pocket of his jeans, a stain that was so small it was consumed in testing, which had an extremely low population frequency. The State's expert could not even say that it was a match to Mayor Thornton. The police didn't check to see why Mayor Thornton wasn't at work. They didn't subpoena his phone records, didn't check his phone for fingerprints, they didn't try to determine who deleted his cell phone call log. And even with all this focus squarely on Aaron Jackson, they didn't place him inside Mayor Thornton's car. The State is going to argue that the evidence at trial was sufficient to convict. Yet the State felt it necessary in its closing arguments to misstate and exaggerate critical physical evidence to the jury, claiming that the DNA was a match to Mayor Thornton and that the fingerprint was fresh. These are clear misstatements of the evidence designed to destroy the defense argument that Aaron Jackson could not be placed inside Mayor Thornton's vehicle at the time of the murder. And these improper arguments created error. The court can review this as first-pronged plain error, because the evidence was so closely balanced that this error alone severely threatened to tip the scales of justice. The Supreme Court has held in SEBI that the court must make a common-sense assessment of the evidence here to determine if it's closely balanced. There can be minor inconsistencies within the testimony. The question we're asking is whether the prosecution or the defense presented accounts that are fanciful. And here we have facts that can be interpreted in two very different ways. By impeachment, the State presented evidence that Norticia Ball had previously identified Aaron Jackson getting out of the mayor's car. However, she testified at the second trial very clearly she only identified him because Detective McAfee threatened to blame the murder on her. Gilda Lott came forward by the second trial, and she testified that she saw Aaron Jackson get out the driver's side door of Mayor Thornton's car and limp away. She was impeached by the defense investigator who testified she admitted she made up this testimony to get out of jail. Gilda Lott was impeached by the Shopwise market clerk who testified he was not asked by Lott to call the police, as she testified. She was impeached by her previous statement that she saw a second man helping Aaron Jackson into the waiting car, which was inconsistent to the version at trial. She was even impeached by the other witness, Norticia Ball, who testified she did not see anyone around Lott's purported location at the time of the crash, and that she was not with Lott at the time of the crash, as Lott claimed. And Norticia and Gilda Lott have Aaron Jackson exiting the cars from two different doors. Under SETI, we also ask if the extrinsic evidence corroborates or contradicts either version of the facts. Well, it contradicts Gilda Lott's version, since it's impossible to imagine anyone crawling past the bloody airbags and over Mayor Thornton's body and out the driver's side door, and then emerge with only a tiny spot of blood on their jeans, again, so small it was consumed in the testing. There's no airbag residue. He didn't leave any fingerprints or hair or fiber evidence in the car. So this physical evidence is open to considerable interpretation. The State's going to argue that Aaron Jackson had gunshot residue on his left hand, his left shoulder, and his right pant leg. However, the defense presented testimony that such particles can be transferred, and gunshot residue isn't unique to this crime. It just shows that you handle a firearm. Here, there's no, and the State presented evidence that sometimes airbag evidence isn't found. But here, again, there's no evidence that Jackson came in contact with an airbag. No evidence of seaming, no airbag residue, no fibers or hairs. His fingerprint was on the outside of the vehicle, but the print was 1 of 57 lifted from the Mayor's car, and it could have been up to a year old. The DNA profile on the jeans did not exclude Mayor Thornton, but with a relatively low frequency, it could belong to many people. And following SEBI, given these opposing versions of events, the fact that the extrinsic evidence, that no extrinsic evidence was presented to corroborate or contradict either version, what we have here is a credibility battle. And when we have a question of credibility between the witnesses with these closely balanced facts, there's, the prejudice is there. That itself, the closely balanced evidence, creates the prejudice. What about the testimony of his girlfriend? His girlfriend testified that he came home, that he had been out and they fought over where he was. And that he had taken her red Impala. And that when the police arrived, he said they must be here for me, which is a reasonable assumption if he doesn't think they're there for her. And they're going to take her car. But again, none of that places him definitively at the scene, inside the car at the murder. He testified that he was around at the time of it, yes. He puts himself outside looking at the car, but nothing places him inside that car as the shooter. And that's what is critical to this case, who shot Mayor Thornton. And again, what we have here are very few facts. Yet the State took those two pieces of critical physical evidence, the blood spot and the fingerprint, and exaggerated them and misstated them. The State used words that their own witnesses would not use on the stand, would not say that this was a match, and could not say the age of the print. And yet the State stated those as facts in their closing argument and presented that information to the jury. The prosecutor's closing argument caused prejudice, and it requires reversal and remand for a new trial here. And if this Court does not reverse the conviction, then it should remand for further Krankel proceedings for one of two reasons. First, the preliminary Krankel hearing here was flawed because the State participated in an adversarial manner. The State wants to describe its participation as just general comments as to what defense counsel said to the Court about trial strategy. But the State here urged the Court to limit its inquiry to only the original letter. It praised the actions of defense counsel, and it asked the Court to make a finding against Aaron Jackson. And when it gave its opinion on the merits of the claims, it engaged in adversarial advocacy. And the nature of the claims here, that specific witnesses were not called and evidence was presented, are not the kind of claims that can be rebutted by the objective record and thus cannot be subject to harmless error review. This type of error that's outside of the record requires a thorough, non-adversarial Krankel inquiry to develop the claims. And that leads us to the second reason for remand under Krankel. Aaron Jackson showed a possibility that his trial counsel neglected his case here. Specifically, his trial counsel's strategic excuse for not challenging the low-probability DNA evidence. That was contradicted by his actions in the record. We all know the DNA evidence was critical here. And this type of scientific evidence has a very powerful influence on a jury. And defense counsel failed to object when the prosecutor exaggerated that evidence in closing argument and said that it matched Mayor Thornton. Defense counsel Keefe's explanation at the Krankel hearing for his failure to object was that his trial strategy was to admit it was Mayor Thornton's blood that he picked up from the outside of the car. That's what he said, but that was not his strategy. He did elicit evidence that some blood consistent with Mayor Thornton was recovered from outside of the vehicle. But he did not argue in closing argument that Aaron Jackson could have come into contact with this blood. Instead, his argument was, they can't tell you that the blood is John Thornton's. So the strategy he used was that the blood was not Thornton's. Yet he had failed to object when the state had properly told the jury the blood was Thornton's. And the record belies his explanation. His failure to question the DNA evidence cannot be excused by trial strategy. Aaron Jackson showed a clear neglect in his case on this very critical area of the DNA evidence, something that goes to the core of his case. Some of the very few items of proof presented to that jury, that DNA evidence, was critical here. The trial counsel believed this excuse of trial strategy, even though it was belied by the record, and the trial court failed to appoint new defense counsel to investigate Aaron Jackson's claims. This court should remand this cause for the appointment of counsel and further crankle proceedings so Aaron Jackson, because he has shown that his trial attorney neglected his case, and he has shown clear neglect and deserves the opportunity for further crankle inquiry. Thank you. Time for rebuttal. Discussion. May it please the court, counsel, Chelsea Kasten on behalf of the state. Your Honors, in this case the state has already met its burden in having a jury determine that it showed beyond reasonable doubt  Now, in this case, there's a large volume of issues that have been raised, and I won't have time to address them all. So unless there's something specific that the court wants to address, I'm just going to try and address what was raised here today by opposing counsel. Specifically, Your Honors, that the prosecution in this case committed error in some of his comments that he made during closing arguments. Your Honors, in closing arguments, prosecutors are reporting wide latitude and are viewed in their entirety. Challenged remarks have to be viewed in the context of the entire closing argument and realistically in the context of any evidence that they refer to in closing argument to understand where the comments might be coming from. To determine if comments made constitute misconduct, then this court has to ask whether or not the comments engender substantial prejudice against the defendant such that it is impossible to say whether or not the verdict of guilt resulted from them. Keeping in mind that prosecutors are still allowed to prosecute with earnestness and vigor. In this particular case, Your Honors, the prosecution did not commit reversible error or plain error based on his comments in closing argument and was just passionately advocating and trying to close his case that he had been working so hard on. Many of the comments arose just from natural assumptions that could be drawn from the evidence that was presented to the jury. Specifically, the issue of the blood that was found on the defendant's pants, Your Honor. It's true the sample wasn't large enough in order to come up with what the expert terms as a match. But he also testified to the fact that it was a cannot be excluded. Which means that in a mathematical equation, they were able to deduce that one in 46,000 African American male individuals would have this specific kind of makeup for this blood pattern. And that happened to match to the victim in the case. And it was found on the defendant's pants, Your Honors. And his blood, the defendant's blood, did not match that. His blood, however, was found on his t-shirt. And so it's a natural assumption when you have a community of less than 4,500 people and you're told that one in 46,000 are going to have this kind of blood. It's a natural assumption to say that's probably the victim's blood. In addition, Your Honors, even if he got very close to crossing a line, anything that he said would have been remedied by the instructions from the trial court when they were instructing the jury before they deliberated. Specifically, Your Honors, in the record on page 1,818, they said, neither open statements nor closing arguments are evidence. And any statement or argument made by the attorneys which is not based on the evidence should be disregarded. That is generally sufficient, Your Honors, to remedy any air and closing arguments that may have been made while the state was trying to passionately close the case. Additionally, Your Honors, the Illinois Supreme Court did recently come out with its decision of SEBI where they said that it rests not upon the seriousness of the error but upon the closeness of the evidence. To be quite honest, I'm not sure if I entirely understand how they want us to apply that standard now. But that being said, in that case, all you have was witnesses testifying against each other. We don't just have witnesses in this case, Your Honor. We also have physical evidence that was presented. And in addition to the evidence that was presented, the state went so far as to show evidence of why something might be absent at the crime scene. They really tried to give a full picture of why the crime scene was the way it was. In looking specifically at the evidence, Your Honors, outside of witness testimony, the victim in this case was shot. And on the defendant, they found gunshot residue on his left hand. They found gunshot residue on his left shoulder going down towards the armpit area. And they also found it on his right pant leg. In addition, Your Honors, the accident happened in a vehicle that then crashed into a tree. And the defendant in this case had an abrasion on his right hand and had an abrasion on his shin, which then goes to witness testimony that he was seen limping, getting out of the vehicle, and leaving the premises. In addition to that, Your Honors, his fingerprint was found on the vehicle. It was outside, but it's on the vehicle. And then there's also the spot of blood on his pants that did not belong to him and could have been the victim's. The victim was not excluded from that. In addition to going back to the incident, Your Honor, he's, again, covered in blood. His own blood. And he's walking with a limp. In addition, Your Honors, the defendant also placed himself within the vicinity, and his alibi was, I don't remember what happened. So in considering the totality of all the evidence together, which is what this court has to do, and it has to be viewed in favor of the state, it's obvious, Your Honors, that this is not a closely balanced case and that the jury was properly allowed to consider the evidence before it when it properly determined that the defendant in this case killed the victim. Does the court have any further questions? I believe so. Thank you. Thank you. Ms. Williams. The State says that the prosecutors afforded wide latitude in the context, and we have to look at the context of the entire argument here. But that doesn't explain why the State stood up and in the first part of its closing argument said that the DNA was a match. That was in no way invited by any argument made by the defense counsel here. The State here gave testimony in that closing argument that its expert, Jay Winters, would not give. He was asked three times, and three times he said he could not say that this DNA was a match. There are specific words. DNA evidence is so complicated, and I think that's the most frustrating thing about the record here is how little developed it is. But it was very clear that Jay Winters would not say that the DNA was a match. That word has a very clear meaning. Yet the prosecutor stood up, uninvited by any other argument, and said that this was a match. He said it again in servo battle. Not probably the victim's blood, as the State is saying today, but it's a match. And that's what the jury heard. And yet the jury did hear jury instructions, but they also heard this. This was the last thing that they heard before they retired to the jury room, was the State urging them that this was a match, that this was Mayor Thornton's blood, that Mayor Thornton's blood was on my client's genes. And it was given and heard without any objection by the defense counsel. He said his trial strategy would have been to argue against it, but he didn't. And here the jury was allowed to hear that without objection, which shows, again, clear neglect of this case. And I would ask that this Court does not reverse or remand this case for improper closing arguments, that they do send this case back to the trial court for further crankle proceedings. Thank you.